IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ZENAS PEREZ LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-073 |
| | ) | |
| VANCE LAUGHLIN, Warden, | ) | |
| Wheeler Correctional Facility, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Thomas County Prison in Thomasville, Georgia, is proceeding *in forma pauperis* in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.  BACKGROUND**

Plaintiff names Vance Laughlin, Warden of Wheeler Correctional Facility ("WCF") in Alamo, Georgia, as the only Defendant. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On January 26, 2015, Plaintiff was incarcerated at WCF. (Id. at 5.) He met with a Unit Manager to complain about a prison counselor who Plaintiff alleges was encouraging

gang members to harass him. (Id.) Plaintiff also provided information about alleged improper "personal dealings" between the counselor and WCF inmates, including allegations that this counselor and other WCF staff members were bringing contraband into the prison. (Id. at 5-6.) The Unit Manager set up a meeting with Plaintiff, the counselor, and the deputy warden of security at WCF to discuss Plaintiff's allegations. (Id. at 6-7.)

After the meeting, the counselor, along with gang-member inmates acting at the behest of the counselor, followed, harassed, and intimidated Plaintiff. (Id. at 7-8.) Plaintiff filed a grievance on April 15, 2015, but then dropped it on April 21, 2015, because a gang-member inmate told him to do so, and Plaintiff then asked to be placed in protective custody. (Id. at 7-9.) While in protective custody, Plaintiff filed another grievance, but it was never processed. (Id. at 10.) Plaintiff did not file an appeal of the inaction on his grievance.

In an effort to resolve the problems at WCF, Plaintiff then transferred to Muscogee County Prison ("MCP") in Columbus, Georgia. (Id. at 10.) At MCP, another inmate approached Plaintiff and asked him about one of the inmates with whom Plaintiff had a problem at WCF. (Id. at 10-11.) After that, a rat shot under the neck was left on the sidewalk at Plaintiff's work detail. (Id. at 11.) Plaintiff filed a grievance, but it was denied as untimely. (Id.) Plaintiff filed a second grievance that was not processed. (Id.) Plaintiff states a counselor at MCP told him the grievances were sent to WCF, and he was told "to request forms." (Id. at 11.)

Plaintiff then filed an appeal of the denial of the untimely grievance on February 12, 2016 that is pending with Inmate Affairs. (Id. at 3.) At the time Plaintiff signed his

complaint on September 22, 2016, he was waiting on the final results of the appeal but decided to file his complaint in federal court because he does not trust the prison. (Id. at 4.)

After the rat incident at MCP, Plaintiff transferred to Thomas County Prison ("TCP") in Thomasville, Georgia. (Id. at 12.) At TCP, Plaintiff alleges his mail to pastors, as well as his Bible study lessons, are being tampered with. (Id.) Lastly, one of his pastors has been denied visits with Plaintiff, and the pastor's phone number has been blocked to Plaintiff. (Id.) Plaintiff does not report any grievance activity with respect to his allegations concerning TCP.

Plaintiff seeks an order directing WCF and the Georgia Department of Corrections to "see after [his] safety" while he is incarcerated. Plaintiff also wants to be transferred to a Christian or Transitional Center as soon as possible, to be awarded $100,000 in damages, and to have the FBI investigate the staff at WCF. (Id. at 13.)

## II. DISCUSSION

### A. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff Fails to State a Valid § 1983 Claim.

#### 1. Plaintiff Fails to State a Claim against Defendant Laughlin.

Plaintiff's complaint fails to state a claim against Defendant Laughlin, the Warden at WCF, because Plaintiff is attempting to hold Mr. Laughlin liable merely because of his supervisory position as the titular head of WCF. In other words, Plaintiff improperly attempts to hold this Defendant responsible for the acts of the staff at WCF whom Plaintiff alleges has mistreated him and had improper personal dealings with other inmates. However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold a supervisor liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff never even mentions Defendant Laughlin in his statement of claim. The Warden's name appears in the caption and the list of Defendants in the complaint, but nowhere else. Plaintiff does not allege that Defendant Laughlin was involved in any way with the alleged improper behavior at WCF.

Likewise, Plaintiff must allege a causal connection between Defendant Laughlin and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff never mentions Defendant Laughlin in his statement of claim, let alone alleges he made Defendant Laughlin aware of any problems with other inmates or WCF. Nor has he alleged Defendant Laughlin had any knowledge of a widespread problem with harassment and improper dealings between staff and inmates at WCF. In sum, Plaintiff has not shown Defendant Laughlin actually participated in the alleged constitutional violations; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted.

### 2. Plaintiff Improperly Attempts to Raise Claims about Events that Allegedly Occurred in the Middle District of Georgia.

To the extent Plaintiff complains about events at MCP and TCP, located respectively in Columbus and Thomasville, Georgia, Plaintiff has alleged no connection or involvement by Defendant Laughlin. Moreover, it is well settled that a plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (*en banc*). As recognized by the Eleventh Circuit Court of Appeals in analyzing the requirements of Rule 13(a), "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998); Tarver v. Owens, 5:14-CV-214, 2014 WL 3810594, at *4 (M.D. Ga. Aug. 1, 2014) (same). Here, as set forth by Plaintiff in his statement of claim, there is no apparent connection between Defendant Laughlin and Plaintiff's descriptions of alleged mistreatment at both MCP and TCP.

As both MCP and TCP are located in the Middle District of Georgia, if Plaintiff has unrelated claims against individuals at those locations, any such claims must be must be filed in a separate case in the Middle District of Georgia.

7

### 3. Plaintiff Did Not Exhaust His Administrative Remedies.

Even if Plaintiff had stated a valid claim for relief related against Defendant Laughlin, his complaint is subject to dismissal because of his failure to exhaust administrative remedies.

#### a. The Exhaustion Requirement of the Prison Litigation Reform Act ("PLRA").

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a

prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### b. The Prison Grievance Procedure.

The Georgia Department of Corrections ("DOC") administrative grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

### c. Plaintiff's Failure to Exhaust.

Although Plaintiff references several grievances, it is clear from the face of his complaint that he did not exhaust his administrative remedies with respect to any claims against Defendant Laughlin prior to filing this lawsuit. At WCF, Plaintiff filed a grievance on April 15, 2015, but then dropped it on April 21, 2015. (Doc. no. 1, pp. 7-8.) While in protective custody, Plaintiff filed another grievance, but he states it was never processed. (Id. at 10.) Plaintiff did not file, as provided for in SOP IIB05-0001 § VI(E)(4), an appeal of the inaction on his grievance.

At MCP, Plaintiff filed a grievance in December of 2015, but it was denied as untimely. (Id. at 3, 11.) Plaintiff states he filed an appeal in February of 2016 that had not been resolved at the time he filed his lawsuit. (Id. at 3-4.) Even if the Court were to presume that that the time for responding to the appeal had passed by September 22, 2016, Plaintiff acknowledges the grievance was denied based on the failure to follow the procedure as to the timeliness of raising his claims. (Id. at 11.) If Plaintiff filed a grievance in December of 2015 regarding the events described in the statement of claim as occurring in April and May of 2015, he clearly exceeded the ten-calendar-day time limit for filing. See SOP IIB05-0001 § VI(D)(4). If Plaintiff filed his grievance regarding events at MCP, those events, as explained *supra*, occurred in the Middle District of Georgia. The PLRA requires proper exhaustion and compliance with administrative deadlines and critical procedural rules. See Woodford, 548 U.S. at 90, 93. As to claims arising at WCF in April and May of 2015, Plaintiff, by his own admission, failed to comply with the DOC's administrative grievance procedure.

Because it is clear from the face of Plaintiff's complaint he did not exhaust his administrative remedies, his complaint fails to state a claim upon which relief can be granted for this reason as well. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 27th day of October, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA